### Quigley, Appellant, v. Pressler and Waltenbaugh et al.

Argued April 18, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNING-
HAM, BALDRIGE, STADTFELD and PARKER, JJ.

*F. B. Trescher* of *Kunkle, Walthour & Trescher,* and
*Donald L. Hankey,* for appellant.

*Francis A. Wolf,* and with him *Meyer and Nunnink,*
for appellee.

OPINION BY TREXLER, P. J., July 14, 1932:

This is a compensation case. The claimant was injured on January 17, 1930. The elevator on which he was standing dropped a distance of 18 to 20 feet striking a concrete base. He continued working until February 26, 1930 at which time he entered into a compensation agreement with the defendant, and on July 2, 1930 gave a final receipt. On December 15, 1930 he presented a petition for review alleging that he signed the receipt due to a mistake of fact. The referee found such to be the case, reinstated the agreement and his action was approved by the board, but reversed by the court of common pleas. Our inquiry is limited to determine whether there is sufficient testimony to uphold the finding of the referee and board.

The claimant testified that he was hurt in the neck and right arm by the accident, and never had any pain in that region before. Dr. Hamilton states that the claimant told him, that he had severe headaches and severe pains over the right shoulder, and could not use the right arm, and complained of numbness. The doctor testified that the conclusion drawn from his examination was dependent considerably on the narrative of the claimant. He had a history of having a severe fall in an upright position. He concluded from his examination that the fall in the upright position had *possibly* injured a cervical vertebra. He stated that as a result of the injury of the cervical vertebra there was *possibly* a chronic cervical arthritis. The doctor found from his own observation a weakness of the right arm; an arthritic condition, and to quote his testimony "in this man's case I think it is due to traumatism. I don't think infection in the teeth would lead to the serious pathological condition that this man exhibits." "Q. You stated that the man is suffering from arthritis of the vertebrae. A. I think so, traumatic nature." He stated that arthritis usually

came through the blood stream, but it could come in through traumatism, and that he was taking into consideration, in the present case, the position in which the man fell. He was of the opinion that the body twisted in the descent, and that from the fall the cervical vertebrae have been injured and squeezed together violently. We again quote, "Q. That is, in other words, doctor, your opinion is that there has been an injury to the cervical vertebrae as a result of contre-coup? A. Yes; that is exactly it. The cervical vertebrae have been injured because they have been squeezed together violently. As a result of this the synovial membrane covering the cervical vertebrae has been injured to such extent that there has been a process of repair there and consequently replacement of it by fibrous over-growth which, being qualified and durable, had included the cervical nerves on that side." The first X-ray taken showed a fracture of the vertebrae. The objection that Dr. Hamilton based his opinion upon the statement of the claimant as to the history of the case does not prevent his testimony being accepted, for what the claimant told him is a presentation of the same facts, which appeared at the hearing. Necessarily unless based entirely on objective symptoms the opinion of the doctor must be dependent upon the history of the case. While it is true that the doctor at one place said, the fall has *possibly* injured the cervical vertebrae, he follows this by the statement, as we have already noted, that the present condition of the claimant was due to an injury and, of course, there is no question that the only injury the man sustained was the one which resulted from the fall, and the doctor testified that the fall would cause a trauma to the vertebrae. Taking his testimony as a whole in connection with what actually happened (Paul v. Atlantic Refining Co., 304 Pa. 360), it sustains the conclusion of causal connection between the present state of the claimant and the injury due to

the fall of the elevator. The testimony need not be free from every doubt. See Farran v. Curtis Publishing Company, 276 Pa. 553.

Dr. Snyder, called by the defendant, stated, that in his opinion, the crack in the spinal column was probably caused by the fall, and that the muscular spasm which followed the accident was due to this crack in the vertebrae. The first X-ray disclosed this crack in the vertebrae, and Dr. Snyder's testimony on behalf of the defendant assumes this to be a fact. Dr. Decker testified that there never had been a crack in the vertebrae, for if there had been it would have been revealed upon the taking of the second X-ray. Dr. Hamilton testified, if there were a fibrous growth which caused an impingment of the nerve, an X-ray would not show the extent of such a fibrous growth. Some one must be wrong. It was not the duty of the court to weigh the testimony. If there was sufficient to support the finding, even although the court may very reasonably have come to a different conclusion from the referee, the finding must stand: Vorbnoff v. Mesta Machine Co., 286 Pa. 199.

The order of the lower court is reversed, and the award of the Workmen's Compensation is reinstated. Appellant to pay the costs.